*EXHIBIT 2*

Case 3:18-cv-00359-WHA Document 57-3 Filed 03/08/18 Page 2 of 26

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## MARSHALL DIVISION

| | | |
|---|---|---|
| UNILOC USA, INC., ET AL | § | Case No. 2:17-cv-00470-JRG |
| *Plaintiffs,* | § | (LEAD CASE) |
| | § | |
| v. | § | **JURY TRIAL DEMANDED** |
| | § | |
| APPLE INC., | § | |
| APPLE INC., | § | Case No. 2:17-cv-00455-JRG |
| *Defendant.* | § | |

## DEFENDANT APPLE INC.'S MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT PURSUANT TO FED. R. CIV. P. 12(B)(6)

Case 3:18-cv-00359-WHA  Document 57-3  Filed 03/08/18  Page 3 of 26

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................... ii

I.     INTRODUCTION ....................................................................................................... 1

II.    BACKGROUND ......................................................................................................... 2

    A.    Uniloc's '422 Patent and "Graphics Primitives" ........................................... 2

    B.    The Uniloc Plaintiffs' Allegations Against Apple ......................................... 3

III.    ARGUMENT ............................................................................................................... 5

    A.    Uniloc's Amended Complaint Does Not Plausibly Allege Direct Infringement ......... 5

    B.    Uniloc's Amended Complaint Does Not Plausibly Allege Indirect Infringement ........ 7

IV.    CONCLUSION ........................................................................................................... 9

# TABLE OF AUTHORITIES

**Cases**

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009) ................................................................................ 2, 5, 7

*Atlas IP, LLC v. Exelon Corp.,*
    189 F. Supp.3d 768 (N.D. Ill. 2016) .................................................................... 5

*Bartonfalls LLC v. Turner Broadcasting Sys., Inc.,*
    2017 WL 13752505 (E.D. Tex. Mar. 15, 2017) ..................................................... 7

*Bell Atlantic Corp. v. Twombly,*
    550 U.S. 544 (2007) ........................................................................................ 5

*Core Wireless Licensing S.A.R.L. v. Apple Inc.,*
    2015 WL 5000397 (E.D. Tex. June 3, 2015) ........................................................ 9

*Cross Medical Prods., Inc. v. Medtronic Sofamor Danek, Inc.,*
    424 F.3d 1293 (Fed. Cir. 2005) ....................................................................... 9

*Dynacore Holdings Corp. v. U.S. Philips Corp.,*
    363 F.3d 1263 (Fed. Cir. 2004) ....................................................................... 8

*Global-Tech Appliances, Inc. v. SEB S.A.,*
    563 U.S. 754 (2011) ........................................................................................ 8

*Ingeniador, LLC v. Interwoven,*
    874 F. Supp. 2d 56 (D.P.R. 2012) ..................................................................... 8

*Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.,*
    843 F.3d 1315 (Fed. Cir. 2016) ....................................................................... 8

*Ruby Sands LLC v. American Nat'l Bank of Texas,*
    2016 WL 3542430 (E.D. Tex. Jun 28, 2016) .................................................... 5, 7

*S. Christian Leadership Conference v. Supreme Ct. of State of La.,*
    252 F.3d 781 (5th Cir. 2001) ........................................................................... 5

## I.    INTRODUCTION

Plaintiff Uniloc USA, Inc. and Uniloc Luxembourg, S.A.'s (collectively, "Uniloc") Amended Complaint fixes none of the fatal deficiencies in its initial Complaint.  If anything, Uniloc's second attempt to plead infringement of U.S. Patent No. 6,580,422 ("the '422 Patent") is less plausible than its first.  Where Uniloc's original Complaint failed to specify the allegedly infringing Apple Inc. ("Apple") technology, the Amended Complaint now accuses Apple technology that the '422 Patent itself says it does not cover.

The '422 Patent discloses using so-called "graphics primitives" to wirelessly transmit video to a remote monitor.  These graphics primitives are "instructions which tell a graphics display what to draw," such as "draw a line."  (Ex. A, '422 Patent at 2:48-51.)  Sending such "primitives" is the '422 Patent's allegedly novel feature, which the patent explicitly differentiates from "directly transferring an image as a bit stream" or pixels.  (*Id.* at 2:45-47.)  In fact, each asserted claim requires "converting video requests" into "primitives" for transmission; none claims transferring data as a bit stream.  (*Id.* at Claims 1, 9, 17, 20.)

Uniloc's Amended Complaint alleges that Apple uses the very technology that the '422 Patent described as different from what is claimed.  According to the Amended Complaint, Apple's iPhones and Macs send a "video data bitstream" to an Apple TV.  (Dkt. 63-1 at pg. 8.)[1] Because the '422 Patent exclusively claims transmitting "graphics primitives," and distinguishes that from sending a "bit stream," Uniloc's Amended Complaint amounts to pleading that Apple

---

[1] Uniloc attached a chart to its Amended Complaint called "Exhibit A," which supposedly "identif[ies], as specifically as possible without discovery, where each element of each asserted claim is found within the accused instrumentalities."  (Dkt. 63 at ¶ 12; *see* Dkt. 63-1.)  It is unclear whether Uniloc intends this document to supplement its existing infringement contentions.  But the deadline for submitting contentions without the Court's permission, based on a showing of good cause, has passed.  Uniloc did not show good cause to amend its contentions and has not sought leave of Court to do so.  By addressing Exhibit A herein, Apple does not concede that it is effective as an amendment to Uniloc's Rule 3-1 contentions.

does <u>not</u> infringe.  Pleading non-infringement, as Uniloc has done, is as far removed as possible from stating a "plausible" claim for infringement, as *Ashcroft v. Iqbal* requires.  556 U.S. 662 (2009).  Uniloc's Amended Complaint should therefore be dismissed.

## II.     BACKGROUND

### A.     Uniloc's '422 Patent and "Graphics Primitives"

The '422 Patent relates to a particular way of sending video wirelessly from a computer to a remote monitor.  (Ex. A, '422 Patent at 1:9-11.)  As the '422 Patent recognizes, to send video wirelessly, "it is necessary to transfer the image . . . across the data link to the remote display []."  (*Id.* at 1:50-53.)  But the data rate required to transmit unconverted video by a bit stream is "quite high."  (*Id.* at 1:53-54.)  And, at the time the '422 Patent was filed, wireless bandwidth was difficult to come by.  According to the '422 Patent, the cost of acquiring enough bandwidth to transmit video at the necessary rates "may be prohibitive." (*Id.* at 1:58-60.)

To address this issue, the '422 Patent proposed to transfer video not by a conventional bit stream, but instead by converting "video requests" to "graphics primitives."  (Ex. A, '422 Patent at 2:45-47.)  As confirmed by the '422 Patent, graphics primitives can include "high level instructions which tell a graphics display what to draw…such as a command to draw a line."  (*Id.* at 2:48-51.)  In the '422 Patent's approach, a transmitting device "convert[s] video requests" into primitives before transmitting them.  (*Id.* at, *e.g.*, 4:22-23.)  The receiving device then converts the primitives into "digital data" for display.  (*Id.* at 4:25-32.)  Transmitting video in this way supposedly requires less bandwidth "than required to directly transfer[] the video image as a bit stream." (*See id.* at 1:67-2:4.)  The '422 Patent repeatedly and unambiguously differentiates the claimed invention—graphics primitives—from the bit stream transmission method.  (*Id.* at 1:66-2:4; 2:45-47.)

Each independent claim of the '422 Patent requires converting video into "graphics

primitives" and wirelessly transmitting the primitives.  (*Id.* at Claims 1, 9, 17, 20.)  Claim 1 is representative:

> 1. A remote computer display system comprising:
>
> a portable computing device (PCD) having a wireless transmitter;
>
> a remote video display electrically connected to a wireless receiver;
>
> the PCD also having a video driver operative to receive video requests issued by a software program executing on the PCD and **converting the video requests into graphics primitives which are sent as signals by the wireless transmitter** to the wireless receiver;
>
> the wireless receiver being operative to receive the signals sent by the wireless transmitter and to **convert the received signals into digital data representing the graphics primitives** and also operative to send the digital data to a remote display driver; and
>
> the remote display driver is operative to cause the remote video display to display a video image in response to the digital data sent by the wireless receiver.

(*Id.* at 4:14-32; emphasis added.)

## B.    The Uniloc Plaintiffs' Allegations Against Apple

Uniloc first attempted to plead a claim for infringement of the '422 Patent six months ago, on May 26, 2017. In its original Complaint, Uniloc alleged that Apple infringes by using an iPhone or iPad with an Apple TV. (Case No. 2:17-cv-455[2], Dkt. 1 at ¶¶ 10-14.)  Uniloc did not allege that Apple's iPhones or iPads convert video into graphics primitives for transmission. Rather, Uniloc alleged that Apple's iPhones and iPads "send video signals" directly to the Apple TV:

> 13. In response to a request sent by an Apple TV, **iPhones and iPads can send video signals to the Apple TV**.
>
> 14. Upon receipt of the video signals, the Apple TV can convert the signals into digital graphical data for display on the TV screen.

---

[2] Uniloc's original Complaint is found on the docket for case number 2:17-cv-00455.  The Court consolidated the '455 case with others under lead case number 2:17-cv-00470.  As such, Uniloc's Amended Complaint for the '455 case and Apple's corresponding Motion to Dismiss are both filed on the docket for the '470 lead case.

(*Id*. ¶¶ 13-14.)   Apple moved to dismiss the original Complaint, arguing that Uniloc had not plead any facts that showed that Apple used the claimed "primitives," or even specified what video signals Uniloc claimed to be the "primitives."  (Case No. 2:17-cv-455, Dkt. 26 at 3-6.)

Over three months after that motion was filed—and two months after briefing was complete—Uniloc filed its Amended Complaint.  Uniloc's Amended Complaint is just as threadbare as its original Complaint.  Uniloc alleges that Apple directly infringes "at least claims 1, 3, 5, 8, 9, 11, 13, 16-18, and 20-21 of the '422 Patent."  (Dkt. 63 ¶ 15.)  According to Uniloc, Apple infringes by using an iPhone or iPad with an Apple TV.  (*Id*. at ¶¶ 10-12.)  With respect to "graphics primitives," the Asserted Complaint takes the same conclusory language from the original Complaint and simply inserts the words "graphics primitives":

> 10. In response to a request sent by an Apple TV, iPhones and iPads send video signals, including <u>video converted into graphics primitives</u>, to the Apple TV.

(*Id*. ¶ 10 (emphasis added).)  This is the only allegation in Uniloc's Amended Complaint itself relating to how Apple's products transmit video.  The Amended Complaint does not plead any facts regarding why it believes that Apple transmits primitives, or what those primitives are.

Uniloc's Amended Complaint attaches, as "Exhibit A," a claim chart.  According to Uniloc, this chart "identif[es], as specifically as possible without discovery, where each element of each asserted claim is found within the accused" products.  (Dkt. 63 at ¶ 12.)  "Exhibit A" explains that Uniloc is reading the "graphic primitives" limitation on the bitstream method that the '422 Patent describes as different from its invention:

> . . . Apple mobile devices include a video driver (e.g., Apple A10 GPU), connected to the mother board or integrated circuit chip or processor (e.g., Apple A10 Processor), that receives instructions from the processor to **generate graphics primitives (e.g., encoded and compressed video data)** responsive to software commands. **The video driver converts received video data into an encoded and compressed video data bitstream,** which is then sent as signals by the Wi-Fi module to the Apple TV**.** The Apple TV then receives

4

the signals using the Apple TV's Wi-Fi module. The step of sending the signals as graphics primitives to the Apple TV is performed using Apple's AirPlay Mirroring feature to send video out to the Apple TV, as shown below.

(Dkt. 63-1 at pg. 8.) Apart from this language, Exhibit A contains no other identification of what in Apple's products represents the claimed "primitives."

## III. ARGUMENT

### A. Uniloc's Amended Complaint Does Not Plausibly Allege Direct Infringement

To plead a viable infringement claim, the Amended Complaint must allege facts that, taken as true, make that claim "plausible on its face." *Iqbal*, 556 U.S. at 678; *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are not enough. *Iqbal*, 556 U.S. at 678; *see S. Christian Leadership Conference v. Supreme Ct. of State of La.*, 252 F.3d 781, 786 (5th Cir. 2001). Rather, Uniloc's Amended Complaint must include allegations that plausibly suggest that Apple practices every element of at least one claim of the '422 Patent. *See Ruby Sands LLC v. American Nat'l Bank of Texas*, No. 2:15-cv-1955-JRG, 2016 WL 3542430, *2, *4 (E.D. Tex. Jun 28, 2016); *Atlas IP, LLC v. Exelon Corp.*, 189 F. Supp.3d 768, 775 (N.D. Ill. 2016) (dismissal is appropriate when "a plaintiff does not allege facts about each [claim] element").

Uniloc's Amended Complaint does not come close to meeting this standard. Each asserted claim recites "converting [] video requests" into "graphics primitives" for transmission:

- Claims 1, 9, and 17 all require "converting the video requests into graphics primitives" (Ex. A, '422 Patent at 4:21-28, 5:1-8, 6:8-12);
- Claims 3, 5, 8, 11, 13, 16 and 18 are dependent on claims 1, 9, and 17 respectively (*id.* at 4:46-49, 5:31-34, 6:18-21);
- Claim 20 requires "converting the video requests into graphics primitives" and a "transmitter [that] includes means for converting the graphics primitives into digital data representing the graphics primitives" (*id.* at 6:30-35); and
- Claim 21 is dependent on claim 20 (*id.* at 6:38).

Uniloc provides no facts to make it plausible that any of these claim elements are met, and actually pleads facts that demonstrate that they are not. The Amended Complaint itself simply rearranges the words of the claim limitation ("converting the video requests into graphics primitives"). It then asserts, without explanation, that unspecified "signals" satisfy this element:

> 10. In response to a request sent by an Apple TV, iPhones and iPads send video signals, including video converted into graphics primitives, to the Apple TV.

(Dkt. 63 ¶ 10.) This is all that the Amended Complaint offers. It pleads no facts about what the alleged "graphics primitives" in Apple's products are. And it pleads no facts about where the primitives supposedly appear in the images that Apple's products display.

The lack of any supporting facts in Uniloc's Amended Complaint would, by itself, warrant dismissal. Here, however, Uniloc's pleadings are even more deficient than the body of its threadbare complaint suggests. The claim chart attached to the Amended Complaint supposedly shows where Uniloc believes "each element of each asserted claim is found." (Dkt. 63 at ¶ 12; Dkt. 63-1.) According to this chart, the only thing in Apple's products that Uniloc can identify as the claimed transmission of "graphics primitives" is "encoded and compressed video data" that is transmitted as a "video data bitstream." (Dkt. 63-1 at 8.)

Apple's alleged transmission of video data as a bitstream is—as the '422 Patent itself admits—the opposite of the claimed "graphics primitives." The '422 Patent could not be more explicit. It describes "sending graphics primitives across the data link instead of directly transferring an image as a bit stream." (Ex. A, '422 Patent at 2:45-47 (emphasis added).) And, consistent with this disclosure, each claim requires that "video requests" be "converted into" graphics primitives and be transmitted as such to a receiving device. (Id. at Claims 1, 9, 17, 20.) The '422 Patent thus makes clear that video, or a video bitstream, is not itself the primitives—it is something different that must be "converted into" primitives. By relying on a video bitstream,

Uniloc thus alleges that Apple transmits data in exactly the way the '422 Patent distinguishes itself from.  Pleading that Apple uses technology that the '422 Patent itself describes as different from its invention is not an infringement claim that is "plausible on its face."  *Iqbal*, 556 U.S. at 678.

The appropriate remedy for Uniloc's pleading failures is dismissal.  Uniloc has already re-pled its allegations once, in the face of a very similar motion to dismiss.  The fact that it has still not pled a plausible claim that Apple uses "graphics primitives" strongly suggests that it cannot do so.  In addition, Uniloc's failures here are failures of substance, not merely of form.  Uniloc did not just fail to plead enough facts to make its claims "plausible."  *Iqbal*, 556 U.S. at 678.  Rather, Uniloc affirmatively pleads facts from which the only plausible inference is non-infringement.  This is a substantive defect in Uniloc's claims that cannot be cured by any amount of artful redrafting.

There is ample precedent for a dismissal with prejudice here.  This Court dismissed an infringement complaint in *Ruby Sands* because it did not plausibly suggest that the defendant sold what was claimed.  *Ruby Sands LLC*, 2016 WL 3542430, *4.  And in *Bartonfalls LLC v. Turner Broadcasting Sys., Inc.*, the Court dismissed a complaint because "based on the claims, specification, its experience, and common sense, the Court can readily conclude that plaintiff's infringement allegations are implausible on their face."  No. 2:16-CV-1127-JRG-RSP, 2017 WL 13752505, *2 (E.D. Tex. Mar. 15, 2017).  Uniloc's Amended Complaint, like those dismissed in *Ruby Sands* and *Bartonfalls*, is facially implausible, and thus should be dismissed.

**B.     Uniloc's Amended Complaint Does Not Plausibly Allege Indirect Infringement**

Uniloc's indirect infringement claims fare no better than its direct infringement offering.  (Dkt. 63 at ¶¶ 13-15.)  To show that Apple indirectly infringes the '422 Patent, Uniloc must

establish that some third party directly infringes. *See Dynacore Holdings Corp. v. U.S. Philips Corp.*, 363 F.3d 1263, 1272 (Fed. Cir. 2004). Here, the supposedly-infringing third parties are Apple's customers. ([Dkt. 63](#) at ¶¶ 13-15.) But Uniloc's Amended Complaint appears to rely on the same facts to allege infringement by Apple's customers as it did against Apple itself. As set forth above, those allegations do not plausibly suggest that Apple infringes. Turning the same deficient allegations against a different party—Apple's customers—does not somehow make them plausible. Uniloc's indirect infringement claims thus fail. *See Ingeniador, LLC v. Interwoven,* 874 F. Supp. 2d 56, 69 (D.P.R. 2012) (dismissing an indirect infringement claim because the plaintiff failed to adequately plead any direct infringement).

Uniloc's indirect infringement allegations are also inadequate because they do not plead the required intent. "[I]nduced infringement [] requires knowledge that the induced acts constitute patent infringement." *Global-Tech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754, 766 (2011). The plaintiff must also show that the defendant "took an affirmative act to encourage infringement." *Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*, 843 F.3d 1315, 1332 (Fed. Cir. 2016). Here, Uniloc plead no facts whatsoever that suggest that Apple knew or knows that its products infringed the '422 Patent. Indeed, Uniloc has not even pled that Apple was aware of the '422 Patent until the original Complaint was filed. Thus, Uniloc has not pled a complaint for pre-suit inducement. Further, as set forth above, the allegations in Uniloc's original and Amended Complaint are so flawed that they could hardly give Apple the requisite "knowledge" of infringement.

Plaintiffs also do not plausibly identify the required "affirmative act to encourage infringement" on Apple's part. *Power Integrations*, 843 F.3d at 1332. Uniloc's Amended Complaint suggests that Apple's customers "use [such] devices in accordance with Apple's

instructions." (Dkt. 63 at ¶ 13.) But "generic allegations that an alleged infringer provides instructional materials along with the accused products, without more, are insufficient to create a reasonable inference of specific intent for the purposes of an induced infringement claim." *Core Wireless Licensing S.A.R.L. v. Apple Inc.*, No. 6:14-CV-751-JDL, 2015 WL 5000397, *4 (E.D. Tex. June 3, 2015) (collecting cases). The "instructional materials" Uniloc identifies here include references to unspecified YouTube videos, Apple's public homepage, and a customer-login screen. (Dkt. 63 at ¶ 13.) References to these non-specific sources are the definition of "generic allegations that an alleged infringer provides instructional materials." *Core Wireless*, 2015 WL 5000397 at *4. Uniloc's inducement claims thus fail.

Uniloc's contributory infringement claims are similarly inadequate. Contributory infringement requires that that the defendant know "that the combination for which its components were especially made was both patented and infringing." *Cross Medical Prods., Inc. v. Medtronic Sofamor Danek, Inc.*, 424 F.3d 1293, 1312 (Fed. Cir. 2005). Uniloc's "knowledge" allegations for contributory-infringement are the same ones they offered for inducement, and fail for the same reasons. (*Compare* Dkt. 63 at ¶ 17 *with id.* at ¶¶ 15-16.) Uniloc's contributory-infringement claims, too, are inadequate and should be dismissed.

## IV. CONCLUSION

Uniloc's Amended Complaint pleads no facts relating to the central element of the '422 Patent's claims beyond Uniloc's own *ipse dixit*. In fact, the allegations in Uniloc's Amended Complaint demonstrate that there cannot be any plausible allegation of infringement. The Amended Complaint does not plausibly allege infringement, and the Court should therefore dismiss it.

Dated: December 1, 2017

Respectfully submitted,

By:  */s/ Michael Pieja*
Michael T. Pieja (*pro hac vice*)
Alan Littmann (*pro hac vice*)
Jennifer Greenblatt
Doug Winnard (*pro hac vice*)
Andrew J. Rima (*pro hac vice*)
Emma C. Neff (*pro hac vice*)
GOLDMAN ISMAIL TOMASELLI
BRENNAN & BAUM LLP
564 West Randolph Street
Chicago, IL 60662
Telephone:  (312) 381-6000
Facsimile: (312) 881-5191
mpieja@goldmanismail.com
alittmann@goldmanismail.com
jgreenblatt@goldmanismail.com
dwinnard@goldmanismail.com
arima@goldmanismail.com
eneff@goldmanismail.com

Melissa R. Smith
GILLAM & SMITH LLP
303 S. Washington Avenue
Marshall, TX 75670
Tel: (903) 934-8450
Fax: (903) 934-9257
melissa@gillamsmithlaw.com

*Counsel for Defendant Apple Inc.*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a copy of the foregoing DEFENDANT APPLE INC.'S MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT PURSUANT TO FED. R. CIV. P. 12(B)(6) was filed electronically this 1st day of December, 2017, in compliance with Local Rule CV-5(a). Therefore, this document was served on all counsel who are deemed to have consented to electronic service. Local Rule CV-5(a)(3)(A).

/s/ *Michael T Pieja*
Michael T. Pieja (*pro hac vice*)

Case 3:12-cv-09359-WHA   Document 57-3   Filed 03/08/18   Page 16 of 26

# *EXHIBIT A*

US006580422B1

(12) **United States Patent**　　(10) Patent No.: **US 6,580,422 B1**

Reilly　　(45) Date of Patent: **Jun. 17, 2003**

(54) **REMOTE COMPUTER DISPLAY USING GRAPHICS PRIMITIVES SENT OVER A WIRELESS LINK**

(75) Inventor: **John R. Reilly**, Roseville, CA (US)

(73) Assignee: **Hewlett-Packard Development Company, L.P.**, Houston, TX (US)

( * ) Notice: Subject to any disclaimer, the term of this patent is extended or adjusted under 35 U.S.C. 154(b) by 0 days.

(21) Appl. No.: **08/430,943**

(22) Filed: **Apr. 27, 1995**

(51) Int. Cl.$^7$ ................................................. **G09G 5/00**

(52) U.S. Cl. ........................ **345/169**; 345/2.2; 345/2.3; 345/169

(58) Field of Search ........................... 345/1, 2, 3, 202, 345/901, 2.1, 2.2, 2.3, 169; 364/514 A; 340/176, 825.69, 825.72, 825.44; 395/200.03, 200.04, 200.09, 200.18, 154, 151, 155, 161

(56) **References Cited**

U.S. PATENT DOCUMENTS

| | | | | |
|---|---|---|---|---|
| 5,337,044 A | * | 8/1994 | Folger | 340/825.44 |
| 5,408,250 A | * | 4/1995 | Bier | 345/169 |
| 5,440,559 A | * | 8/1995 | Gaskill | 340/825.44 |
| 5,523,769 A | * | 6/1996 | Lauer et al. | 345/2 |
| 5,528,296 A | * | 6/1996 | Gove et al. | 395/151 |
| 5,553,223 A | * | 9/1996 | Greenlee et al. | 395/200.09 |

FOREIGN PATENT DOCUMENTS

| | | | | |
|---|---|---|---|---|
| EP | 0616448 | * | 9/1994 | 395/200.04 |

* cited by examiner

*Primary Examiner*—Bipin Shalwala
*Assistant Examiner*—David L Lewis

(57) **ABSTRACT**

A remote computer display for a portable computing device (PCD) utilizing the transfer of graphics primitives over a wireless data link. The present invention utilizes a wireless (RF or optical) transmitter built into a portable computing device to send graphics commands to a remote computer display. A receiver receives the wireless signals and converts the signals into data which produces a graphics image of the remote computer display. To reduce the data link bandwidth needed to transfer images from the PCD to the remote display, graphics primitives such as HPGL are sent over the data link. The PCD includes a video driver to convert video display requests made by the PCD operating system, or an application program executing on the PCD, into the graphics primitives which are then transferred to the remote display over the data link.

**21 Claims, 5 Drawing Sheets**



Case 2:17-cv-00470-JRG   Document 57-3   Filed 12/01/17   Page 3 of 10 PageID #:  1295



Figure 1



Figure 2



Figure 3



403

## Application Program

| Application instruction | 405 |
| _____ | |
| _____ | |
| Call Video | 407 |
| Application instruction | 405 |
| _____ | |
| _____ | |

401

# Figure 4



# Figure 5

US 6,580,422 B1

**1**

REMOTE COMPUTER DISPLAY USING
GRAPHICS PRIMITIVES SENT OVER A
WIRELESS LINK

FIELD OF THE INVENTION

The present invention relates to remote computer displays. In particular, this invention relates to a remote computer display which takes graphics primitives sent over a wireless link and converts the primitives into a graphics display.

BACKGROUND OF THE INVENTION

The size of the built in video display for a portable computing device (PCD) is generally limited to the dimensions of the devices' enclosure. Portable computing users accept smaller video displays in order to be mobile. Once back in the office or home environment however, small video display dimensions are a product liability.

Because PCD's are reaching sufficient capabilities in computing speed, mass storage, and keyboard ergonomics, users are beginning to consider using a single computing device, their PCD. One important consideration in the decision to switch from using a non-PCD in the workplace, and a PCD for travel and home use are the dimensions of the video display.

Two techniques are generally used to connect a video display with larger dimensions to a PCD: a direct cabled connection to a video display device, or a "docking station" with its own video display device. A direct cabled connection requires that the PCD contain the interface hardware required to properly drive the video display. A docking station requires that the PCD contain the interface hardware required to properly connect to the docking station. This also implies that the number of different kinds of docking stations that may realistically be supported is limited to the amount of hardware support supplied in the PCD.

An alternative to a direct cabled connection or docking station is to allow the PCD to communicate over a wireless (this includes both radio frequency and optical such as infra-red light) data link to a remote display controller that supports a number of different video display devices. The advantage is that standard data link hardware and software protocols would already be built into the PCD to enable it to communicate with other data link compatible devices'. This eliminates the need for the video display driver hardware or docking station hardware to be built into the PCD.

To accomplish the task of drawing the images on the remote video display it is necessary to transfer the image, that the software in PCD is building, across the data link to the remote display controller. However, the data rate required to drive the video display device is quite high. For example to display a frame of video on a monitor having 1280 by 1024 pixels and 256 pixel colors, the PCD needs to transfer 335,544,320 bits of information to the remote display per frame displayed. The costs for such a high data rate link may be prohibitive given the price sensitivity of consumers.

Therefore what is needed in the industry is a means to reduce the bandwidth required to transfer display information to a remote computer display by a wireless data link.

SUMMARY OF THE INVENTION

The present invention provides a wireless remote computer display that minimizes the required data link band-

**2**

width by sending graphics primitives over the data link. The number of primitive drawing instructions required to generate a video image are significantly less than required to directly transferring the video image as a bit stream. A wireless data link would transport the primitive drawing instructions from the PCD to the remote display controller. Hardware in the remote display controller interprets the primitive drawing instructions and generates the video image on the remote computer display.

In a PCD, applications make requests to the operating system to manipulate the video display. The operating system passes the requests to an appropriate software video driver. The video driver interprets the requests and generates changes to the appropriate pixels on the video display. In the present invention, the software video driver in the PCD is used to send the primitive drawing instructions to a protocol module responsible for communicating across the wireless data link to the remote display controller. The remote video controller contains a software and/or hardware driver that interprets the primitive drawing instructions and generates the image on the video display.

The advantages of the present invention are: a PC can be serviced by any remote display controller using a standard wireless data link protocol, the PCD vendor gets a larger video display capability by adding a software driver, the user has one less cable to plug in, and the hardware in the remote display controller may be optimized to perform the image generation faster than is possible by the PCD.

BRIEF DESCRIPTION OF THE DRAWINGS

FIG. 1 illustrates a simplified view of the present invention.

FIG. 2 illustrates a block diagram of the data link transmitter.

FIG. 3 illustrates a block diagram of the data link receiver system.

FIG. 4 illustrates a portion of the code of an application program.

FIG. 5 illustrates a simplified flow chart of a video driver subroutine.

DETAILED DESCRIPTION OF THE
INVENTION

The present invention keeps data link bandwidth to a minimum by sending graphics primitives across the data link instead of directly transferring an image as a bit stream. Graphics primitives are high level instructions which tell a graphics display what to draw. Typically a primitive has a format such as "instruction (argument)". The "instruction" is a drawing command such as a command to draw a line. The "argument" is information used by the instruction such as the starting point, end point and color of the line. So a line draw primitive may look like "Line(x1y1, x2y2, color). In this example, the graphics display is instructed to draw a line from point (x1y1) to point (x2y2) having a particular color. Other primitives are used in the industry. For example, the Hewlett-Packard Co. Graphics Language (HPGL) is a well known high level graphics language consisting of graphics primitives.

FIG. 1 illustrates a remote display system according to the present invention. A laptop computer PCD **101** transmits graphics primitives over a wireless data link **103** to a data link receiver **105**. The data link receiver **105** is connected to a large remote computer display **107**.

The PCD transmits primitives over a wireless link using either radio frequency (RF) or optical technologies both well

US 6,580,422 B1

3

known in the art. This link is in turn received by the data link receiver **105** which converts the RF or optical signals into digital data. The digital data is interpreted by the remote display **107** as graphics primitives which are then used to generate an image on the remote display. The data link receiver **105** may be integral with the housing of the remote display **107** or a constructed as a separate device.

FIG. **2** illustrates an overview of the data link transmitter **201** which is contained within the PCD **101** housing, or as a semi-permanent attachment added on to the PCD housing. The data link transmitter has a data input **203** and a wireless output **205**. The transmitter converts digital data from the PCD into either RF or optical signals which is sent to the remote display. In practice, the transmitter **201** would be interfaced to the PCD as a communications "port" much the same way as is commonly done for serial and parallel interfaces as is well known in the industry.

The PCD interfaces to the transmitter using a software or hardware driver which is linked into the operating system or other program running in the PCD. When a program running in the PCD wishes to send data to the remote display, the program issues a subroutine "call" to the appropriate driver for the data link transmitter. This subroutine formats and sends the required information to the data link transmitter for sending over the data link to the remote display.

FIG. **3** illustrates an overview of the data link receiving system. A data link receiver **301** receives RF or optical signals **303** sent by the data link transmitter **201**. The receiver **301** receives the data link signals **303** and converts them into digital data **305** which is sent to a remote display driver **307**. Hardware and software in the remote display driver **307** interprets the data output **305** to produce a graphics image on the remote display.

FIG. **4** illustrates a portion **401** of a software application program **403** which runs on a PCD. The application includes a series of instructions **405**. Within the program code is a "call video" **407** subroutine call. This call can either be a operating system subroutine call or a call to a special video driver. The video routine is responsible for formatting and sending the required data (graphics primitives) to the data link transmitter for transfer over the data link to the remote display. When the subroutine completes the data link transfer, it "returns" to the calling program **403** which continues to execute on the PCD. This video driver is designed to appear like any other PCD video driver. That is, the driver uses a standard applications program interface.

FIG. **5** illustrates a block diagram of a video driver subroutine **501** for a PCD. The video driver at minimum, includes a data link driver **503**. The data link driver **503** is responsible for determining what display command the application program **403** is issuing and sending the appropriate graphics primitive to the data link transmitter. A PCD display driver **505** would also be typically included in the video driver to send the appropriate data to the display internal to the PCD. The internal display can simultaneously display the same image as the remote display with either the same or reduced resolution. Alternatively, the internal display can be disabled when the remote display is being used. Once the video driver subroutine has completed the video driver tasks, it returns **507** to the calling program (**403** in this example).

As previously mentioned, this video driver subroutine can be part of the PCD software operating system or a separate terminate and stay resident (TSR) software routine. In either case, the video driver routine is available to the PCD operating system and to application programs executing on the PCD.

4

While a preferred embodiment of the invention has been described, other embodiments of the invention will be apparent to those skilled in the art from a consideration of this specification or practice of the invention disclosed herein. For example, instead or combined with sending graphics primitives to a remote display, a remote graphics plotter may utilized. The plotter would have a data link receiver which receives the graphics primitives and sends them to the plotter to produce a hard copy graphics image. Therefore it is intended that the specification and examples be considered as exemplary only, with the scope of the invention being defined by the following claims.

I claim:

1. A remote computer display system comprising:

a portable computing device (PCD) having a wireless transmitter;

a remote video display electrically connected to a wireless receiver;

the PCD also having a video driver operative to receive video requests issued by a software program executing on the PCD and converting the video requests into graphics primitives which are sent as signals by the wireless transmitter to the wireless receiver;

the wireless receiver being operative to receive the signals sent by the wireless transmitter and to convert the received signals into digital data representing the graphics primitives and also operative to send the digital data to a remote display driver; and

the remote display driver is operative to cause the remote video display to display a video image in response to the digital data sent by the wireless receiver.

2. A remote computer display system as in claim **1** wherein:

the wireless transmitter sends graphics primitives to the wireless receiver using infra-red light.

3. A remote computer display system as in claim **1** wherein:

the wireless transmitter sends graphics primitives to the wireless receiver using radio frequencies (RF).

4. A remote computer display system as in claim **1** wherein:

the graphics primitives are Hewlett-Packard Co. Graphics Language (HPGL) graphics primitives.

5. A remote computer display system as in claim **1** wherein:

the wireless receiver is encased in a housing separate from the remote video display.

6. A remote computer display system as in claim **1** wherein:

the wireless receiver is encased integrally with the remote video display.

7. A remote computer display system as in claim **2** wherein:

the wireless transmitter is integral with the PCD.

8. A remote computer display system as in claim **3** wherein:

the wireless transmitter is integral with the PCD.

9. A remote computer display system comprising:

a portable computing device (PCD) having a wireless transmitter;

a remote video display electrically connected to a wireless receiver;

the PCD also having a video driver operative to receive video requests issued by a software program executing

US 6,580,422 B1

**5**

on the PCD and converting the video requests into graphics primitives which are sent as signals by the wireless transmitter to the wireless receiver;

the wireless receiver being operative to receive the signals sent by the wireless transmitter and to convert the received signals into digital data representing the graphics primitives and also operative to send the digital data to a remote display driver;

the remote display driver is operative cause the remote video display to display a video image in response to the digital data sent by the wireless receiver; and

the video driver is also operative to receive video requests issued by the software program executing on the PCD and send data to a video display internal to the PCD to cause the internal video display to substantially simultaneously display substantially the same video image as the remote display.

**10**. A remote computer display system as in claim **9** wherein:

the wireless transmitter sends graphics primitives to the wireless receiver using infra-red light.

**11**. A remote computer display system as in claim **9** wherein:

the wireless transmitter sends graphics primitives to the wireless receiver using radio frequencies (RF).

**12**. A remote computer display system as in claim **9** wherein:

the graphics primitives are Hewlett-Packard Co. Graphics Language (HPGL) graphics primitives.

**13**. A remote computer display system as in claim **9** wherein:

the wireless receiver is encased in a housing separate from the remote video display.

**14**. A remote computer display system as in claim **9** wherein:

the wireless receiver is encased integrally with the remote video display.

**15**. A remote computer display system as in claim **10** wherein:

the wireless transmitter is integral with the PCD.

**16**. A remote computer display system as in claim **11** wherein:

the wireless transmitter is integral with the PCD.

**6**

**17**. A remote computer display system comprising:

a video display; and,

a wireless receiver, electrically connected to the video display, the wireless receiver being operative to receive signals sent by a wireless transmitter, the signals sent by the wireless transmitter being video requests having been converted into graphics primitives by a remote computing system, wherein the wireless receiver includes:

converter means for converting the received signals into digital data representing the graphics primitives, and,

a remote display driver which receives the digital data and causes the remote video display to display a video image in response to the digital data sent by the wireless receiver.

**18**. A remote computer display system as in claim **17** wherein:

the wireless receiver is encased in a housing separate from the remote video display.

**19**. A remote computer display system as in claim **17** wherein:

the wireless receiver is encased integrally with the remote video display.

**20**. A computing device comprising:

a wireless transmitter;

a software program means for issuing video requests; and,

a video driver for converting the video requests into graphics primitives and for sending the graphics primitives to the wireless transmitter;

wherein the wireless transmitter includes means for converting the graphics primitives into digital data representing the graphics primitives and for sending the digital data to a wireless receiver connected to a remote display.

**21**. A computing device as in claim **20** wherein the video driver is additionally operative to receive video requests issued by the software program means and send data to a video display internal to the computing device to cause the internal video display to substantially simultaneously display substantially a same video image as the remote display.

\*   \*   \*   \*   \*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | | |
|---|---|---|
| UNILOC USA, INC., ET AL | § | Case No. 2:17-cv-00470-JRG |
| *Plaintiffs,* | § | (LEAD CASE) |
| | § | |
| v. | § | **JURY TRIAL DEMANDED** |
| | § | |
| APPLE INC., | § | |
| APPLE INC., | § | Case No. 2:17-cv-00455-JRG |
| *Defendant.* | § | |

## ORDER GRANTING MOTION TO DISMISS

Before the Court is the Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6) submitted by Defendant Apple Inc.  Having considered the Motion, and all papers and exhibits filed in support thereof and opposition thereto, the Court finds that the Amended Complaint filed by Plaintiffs in this action does not state a claim upon which relief could be granted under *Ashcroft v. Iqbal*, 556 U.S. 662 (2009).  Therefore, the Court hereby GRANTS Defendant's Motion.  The Amended Complaint filed by the Plaintiffs Uniloc USA, Inc. and Uniloc Luxembourg S.A. in the above-referenced case is hereby dismissed, without prejudice.

SO ORDERED.